BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re Air Crash at Muan International Airport, South Korea on December 29, 2024 | MDL-_____ |

**Brief in Support of Motion for Transfer of Actions to the Northern District of Illinois Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings**

The Boeing Company ("Boeing") respectfully moves this Panel to transfer all wrongful death, survival, and related actions arising out of the December 29, 2024, crash of Jeju Air flight 7C2216 to the Northern District of Illinois for coordinated or consolidated pretrial proceedings. The seven actions identified in the attached Schedule of Actions are pending in three different federal districts and include claims brought by 32 plaintiffs relating to the deaths of 23 passengers of Jeju Air flight 7C2216.

Centralization of these actions under 28 U.S.C. § 1407 is warranted because all these actions arise out of a single aviation accident and involve common questions of fact. Centralization will promote the just and efficient conduct of this litigation by preventing inconsistent resolution of common factual and legal issues, eliminating duplicative discovery, and conserving judicial resources.

Although Boeing maintains that no court in the United States is an appropriate or convenient forum in which to resolve these actions, the Northern District of Illinois is the most appropriate transferee court in the United States. The first-filed and most advanced cases are in the Northern District of Illinois, where they have all been assigned to a single judge. The Northern

District of Illinois has significant experience with multidistrict litigation, particularly multidistrict aviation litigation. It is also the most geographically central U.S. forum. Alternatively, centralization in the Western District of Washington would also be appropriate. Centralization in either venue will promote just and efficient litigation of these cases.

## BACKGROUND

Plaintiffs in these actions seek to hold Boeing liable for a December 29, 2024, accident involving a Boeing 737-800 aircraft operated by Jeju Air as Flight 7C2216. The accident aircraft landed with its gear up, overran the runway, and crashed into a concrete berm at Muan International Airport in South Korea.[1] Jeju Air is a South Korean air carrier. The flight was a commercial flight that departed from Bangkok, Thailand, and was bound for Muan, South Korea. 179 of the 181 passengers and crew members died in the accident. All but two passengers and all crew members were citizens of South Korea. The other two passengers were Thai citizens. No American citizens were on board. The accident aircraft was assembled in the State of Washington, which is also where most of Boeing's design work for the 737-800 aircraft took place.

South Korea's Aviation and Railway Accident Investigation Board ("ARAIB") is investigating the accident pursuant to Annex 13 to the Convention on International Civil Aviation. The United States National Transportation Safety Board ("NTSB") is a party to that investigation, and Boeing is providing technical assistance to the NTSB. The ARAIB investigation is ongoing.

South Korean police are also investigating the accident. They have formally registered a number of suspects, including regulatory officials and employees of the company that operates and manages the Muan International Airport, the Korean companies that constructed the concrete

---

[1] The berm was a concrete structure covered by dirt that was located off the end of the runway used to support airport instruments.

berm that the aircraft struck, and Jeju Air. Neither Boeing nor any U.S. citizen is a registered suspect. The police investigation is ongoing. The South Korean National Assembly is also conducting an ongoing parliamentary investigation.

To date, seven lawsuits relating to the accident are pending in federal district courts:

- ***Ja v. The Boeing Co.* ("*Ja*"), Case No. 1:25-cv-10509 (N.D. Ill.).**

  This action was commenced on August 20, 2025, in the Circuit Court of Cook County, Illinois, and Boeing removed it to the Northern District of Illinois, Eastern Division. In this action, the plaintiff brought suit relating to the death of one decedent. The plaintiff is a citizen and resident of South Korea, as was the decedent. The complaint names Boeing as the only defendant. The plaintiff is represented by Wisner Law Firm, P.C., of Chicago, Illinois. This case has been assigned to the Honorable Steven C. Seeger. Copies of the *Ja* complaint and docket sheet are filed herewith as **Exhibit A**.

- ***Hye v. The Boeing Co.* ("*Hye*"), Case No. 1:25-cv-10512 (N.D. Ill.).**

  This action was commenced on July 18, 2025, in the Circuit Court of Cook County, Illinois, and Boeing removed it to the Northern District of Illinois, Eastern Division. In this action, the plaintiff brought suit relating to the death of one decedent. The plaintiff is a citizen and resident of South Korea, as was the decedent. The complaint names Boeing as the only defendant. The plaintiff is represented by Wisner Law Firm, P.C., of Chicago, Illinois. The district court transferred the case to the Honorable Steven C. Seeger because it is related to the *Ja* case. Copies of the *Hye* complaint and docket sheet are filed herewith as **Exhibit B**.

- ***Yang v. The Boeing Co.* ("*Yang*"), Case No. 1:25-cv-10513 (N.D. Ill.).**

  This action was commenced on August 13, 2025, in the Circuit Court of Cook County, Illinois, and Boeing removed it to the Northern District of Illinois, Eastern Division. In this action, the plaintiff brought suit relating to the death of one decedent. The plaintiff is a citizen and resident of South Korea, as was the decedent. The complaint names Boeing as the only defendant. The plaintiff is represented by Wisner Law Firm, P.C., of Chicago, Illinois. The district court transferred the case to the Honorable Steven C. Seeger because it is related to the *Ja* case. Copies of the *Yang* complaint and docket sheet are filed herewith as **Exhibit C**.

- ***Park, et al. v. The Boeing Co., et al.* ("*Park*"), Case No. 2:25-cv-02204 (W.D. Wash.).**

    This action was commenced on October 14, 2025, in the Superior Court of King County, Washington, and Boeing removed it to the Western District of Washington, Seattle Division. In this action, 26 plaintiffs[2] bring suit relating to the deaths of 14 decedents. Based on plaintiffs' probate filings, Boeing understands that the plaintiffs are citizens and residents of South Korea, and that the decedents were also citizens and residents of South Korea at the time of their deaths. The plaintiffs' complaint names Boeing as the only currently-identified defendant (1–100 Doe defendants are also named). The plaintiffs are represented by Herrmann Law Group of Seattle, Washington. This case has been assigned to the Honorable Robert S. Lasnik. Copies of the *Park* complaint and docket sheet are filed herewith as **Exhibit D**.

- ***Re v. The Boeing Co.* ("*Re*"), Case No. 1:25-cv-1876 (E.D. Va.).**

    This action was commenced on October 27, 2025, in the Eastern District of Virginia, Alexandria Division. In this action, the plaintiff brought suit relating to the death of one decedent. The plaintiff is a citizen and resident of South Korea, as was the decedent. The complaint names Boeing as the only defendant. The plaintiff is represented by The Law Offices of Daniel D. Barks, of McLean, Virginia. The case has been assigned to the Honorable Rossie D. Alston, Jr. Copies of the *Re* complaint and docket sheet are filed herewith as **Exhibit E**.

- ***Jun v. The Boeing Co.* ("*Jun*"), Case No. 1:25-cv-1881 (E.D. Va.).**

    This action was commenced on October 27, 2025, in the Eastern District of Virginia, Alexandria Division. In this action, the plaintiff brought suit relating to the deaths of three decedents. The plaintiff is a citizen and resident of South Korea, as were the decedents. The complaint names Boeing as the only defendant. The plaintiff is represented by The Law Offices of Daniel D. Barks, of McLean, Virginia. The case has been assigned to the Honorable Rossie D. Alston, Jr. Copies of the *Jun* complaint and docket sheet are filed herewith as **Exhibit F**.

---

[2] Although there are 28 distinct names used in the complaint to identify the plaintiffs in this action, based on plaintiffs' probate filings, Boeing understands that there are only 26 plaintiffs. This discrepancy arises from the fact that the complaint appears to vary the spelling of two of the plaintiffs' names: (1) Kim Joeng-nam/Kim Joung-nam and (2) Kwon Mi-young/Kwon Min-young.

- ***Cheol v. The Boeing Co.* ("*Cheol*"), Case No. 1:25-cv-1883 (E.D. Va.).**

  This action was commenced on October 27, 2025, in the Eastern District of Virginia, Alexandria Division. In this action, the plaintiff brought suit relating to the deaths of two decedents. The plaintiff is a citizen and resident of South Korea, as were the decedents. The complaint names Boeing as the only defendant. The plaintiff is represented by The Law Offices of Daniel D. Barks, of McLean, Virginia. The case has been assigned to the Honorable Rossie D. Alston, Jr. Copies of the *Cheol* complaint and docket sheet are filed herewith as **Exhibit G**.

In total, these seven actions are brought by 32 plaintiffs alleging claims relating to the deaths of 23 decedents. Three of these cases are pending in the Northern District of Illinois, where Boeing has filed answers to the plaintiffs' complaints and motions to dismiss on the grounds of *forum non conveniens*. The others are pending in the Western District of Washington, where Boeing has only recently removed the case and filed its answer, and the Eastern District of Virginia, where the plaintiffs only recently filed their complaints.

The complaints in all the pending cases make similar allegations regarding the accident and its cause. All of the pending complaints (1) allege that Boeing defectively designed and manufactured the aircraft and its component parts, (2) seek to hold Boeing liable for passenger deaths, and (3) include claims based on negligence and product liability theories. Plaintiffs' allegations focus on many of the same aircraft systems, including the engines, electrical system, thrust reversers, flaps, spoilers, brakes, landing gear, and auxiliary power unit. Boeing is not aware of any other actions pending in federal court that arise from this accident at this time, but additional actions could be filed in the future.

## ARGUMENT

Thirty-two plaintiffs have filed seven lawsuits against Boeing that are pending in three different federal district courts, alleging claims relating to the deaths of 23 passengers in connection with the loss of Jeju Air Flight 7C2216 at Muan International Airport on December 29,

2024. The actions present common questions of fact. They also share common legal and procedural issues, including the threshold question of whether these actions would be litigated more conveniently in a South Korean forum.

For these reasons, and as explained below, a single federal district court should coordinate or consolidate pretrial proceedings and determine the common factual, legal, and procedural issues arising out of this accident. The Northern District of Illinois, where the most advanced cases are pending, is the appropriate United States court for such proceedings. Alternatively, the Western District of Washington would be an appropriate transferee district.

**I.     All litigation arising out of the loss of Jeju Air Flight 7C2216 should be transferred for pretrial proceedings pursuant to 28 U.S.C. § 1407.**

Title 28, Section 1407 of the United States Code governs multidistrict litigation. This section provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). The Judicial Panel on Multidistrict Litigation ("Panel") will transfer litigation for coordinated or consolidated pretrial proceedings if it determines "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* By providing centralized management under a single court's supervision, transfer pursuant to Section 1407 "eliminate[s] duplicative discovery, prevent[s] inconsistent pretrial rulings, and conserve[s] the resources of the parties, their counsel and the judiciary." *In re: Air Crash Over the Mid-Atl. on June 1, 2009*, 706 F. Supp. 2d 1372, 1374 (J.P.M.L. 2010) ("*Mid-Atl. Air Crash*"). Here, the litigation arising from the loss of Jeju Air Flight 7C2216 fits squarely within the ambit of Section 1407. The actions all involve common questions of fact, and centralization of these cases will promote just and efficient litigation.

A. **The Panel regularly centralizes foreign air crash lawsuits.**

The Panel routinely centralizes complex aviation litigation arising from a single accident, including at least 20 times since 2000. *See In re Air Crash at Toronto Pearson Int'l Airport on Feb. 17, 2025*, MDL No. 3155, 2025 WL 2326833 (J.P.M.L. Aug. 8, 2025); *In re Air Crash into Java Sea on Jan. 9, 2021*, 669 F. Supp. 3d 1368 (J.P.M.L. 2023); *In re Air Crash over the S. Indian Ocean, on Mar. 8, 2014*, 190 F. Supp. 3d 1358 (J.P.M.L. 2016) ("*Indian Ocean Air Crash*"); *In re: Air Crash at S.F., Cal.*, 987 F. Supp. 2d 1378 (J.P.M.L. 2013) ("*San Francisco Air Crash*"); *In re: Air Crash at Georgetown, Guyana, on July 30, 2011*, 895 F. Supp. 2d 1355 (J.P.M.L. 2012) ("*Georgetown Air Crash*"); *In re: Air Crash Near Rio Grande, P.R. on Dec. 3, 2008*, 787 F. Supp. 2d 1361 (J.P.M.L. 2011) (mem) ("*Rio Grande Air Crash*"); *Mid-Atl. Air Crash*, 706 F. Supp. 2d at 1372; *In re: Air Crash at Madrid, Spain, on Aug. 20, 2008*, 672 F. Supp. 2d 1378 (J.P.M.L. 2010) ("*Madrid Air Crash*"); *In re Air Crash near Clarence Ctr., N.Y., on Feb. 12, 2009*, 655 F. Supp. 2d 1355 (J.P.M.L. 2009) ("*Clarence Center Air Crash*"); *In re Air Crash over Makassar Strait, Sulawesi, Indonesia, on Jan. 1, 2007*, 626 F. Supp. 2d 1354 (J.P.M.L. 2009) ("*Sulawesi Air Crash*"); *In re Air Crash at Tegucigalpa, Honduras, on May 30, 2008*, 598 F. Supp. 2d 1368 (J.P.M.L. 2009) ("*Tegucigalpa Air Crash*"); *In re Crash near Medan, Indonesia, on Sept. 5, 2005*, 544 F. Supp. 2d 1379 (J.P.M.L. 2008) ("*Medan Air Crash*"); *In re Air Crash near Peixoto de Azeveda, Brazil, on Sept. 29, 2006*, 493 F. Supp. 2d 1374 (J.P.M.L. 2007) ("*Peixoto de Azeveda Air Crash*"); *In re Air Crash near Athens, Greece, on Aug. 14, 2005*, 435 F. Supp. 2d 1340 (J.P.M.L. 2006) ("*Athens Air Crash*"); *In re Air Crash near Kirksville, Mo., on Oct. 19, 2004*, 383 F. Supp. 2d 1382 (J.P.M.L. 2005) ("*Kirksville Air Crash*"); *In re Air Crash Near Woodbury, Conn., on Dec. 20, 2002,* 374 F. Supp. 2d 1358 (J.P.M.L. 2005); *In re Air Crash Near Castellon, Spain, on Oct. 10, 2001*, 296 F. Supp. 2d 1372 (J.P.M.L. 2003); *In re Air Crash at Charlotte Int'l Airport*

*on Jan. 8, 2003*, 290 F. Supp. 2d 1379 (J.P.M.L. 2003); *In re Air Crash Near Edgartown, Mass., on Oct. 6, 2000*, 269 F. Supp. 2d 1370 (J.P.M.L. 2003); *In re Air Crash at Belle Harbor, N.Y., on Nov. 12, 2001*, 203 F. Supp. 2d 1379 (J.P.M.L. 2002).

Centralization is particularly appropriate in these cases because aviation accidents "involve common questions of fact," and "centralization . . . serve[s] the convenience of the parties and witnesses and promote[s] the just and efficient conduct of th[e] litigation." *Indian Ocean Air Crash*, 190 F. Supp. 3d at 1359; *see also, e.g.*, *San Francisco Air Crash*, 987 F. Supp. 2d at 1379 (same); *Georgetown Air Crash*, 895 F. Supp. 2d at 1356 (same); *Rio Grande Air Crash*, 787 F. Supp. 2d at 1361 (same). The Panel has recognized that a failure to centralize complex aviation lawsuits would "needlessly waste[]" the "time and effort of numerous parties, witnesses, attorneys and judges." *In re Air Crash Disaster Near Chi., Ill., on May 25, 1979*, 476 F. Supp. 445, 447 (J.P.M.L. 1979) ("*Chicago Air Crash*"). That is because, absent transfer under Section 1407, "there inevitably would be repetitious depositions of scores of witnesses, repetitious examinations of thousands of documents, and yet other myriad duplications of pretrial proceedings." *Id.* (describing the waste as "exceptionally serious in these cases because of the unusually complex issues they involve"). Thus, centralization of complex aviation litigation "eliminate[s] duplicative discovery, particularly with respect to potential international discovery" for foreign aviation accidents like the one here. *Indian Ocean Air Crash*, 190 F. Supp. 3d at 1359; *see also, e.g.*, *San Francisco Air Crash*, 987 F. Supp. 2d at 1379 (same); *Georgetown Air Crash*, 895 F. Supp. 2d at 1356 (same); *Tegucigalpa Air Crash*, 598 F. Supp. 2d at 1369 (same).

Further, early dispositive motions will be filed in these cases, and centralization in aviation litigation helps to "prevent inconsistent pretrial rulings[] and conserve the resources of the parties, their counsel, and the judiciary." *San Francisco Air Crash*, 987 F. Supp. 2d at 1379; *see also, e.g.*,

*Georgetown Air Crash*, 895 F. Supp. 2d at 1356–57 (same); *Rio Grande Air Crash*, 787 F. Supp. 2d at 1361 (same); *Madrid Air Crash*, 672 F. Supp. 2d at 1379 (same). If these actions are not centralized, there is a risk that different federal courts considering the same set of facts could reach different conclusions on crucial threshold questions, such that nearly identical claims might be permitted to proceed in one district but not another. In particular, the Panel has centralized litigation in air crash cases where dismissal for *forum non conveniens* presented a common threshold question across the actions, enabling streamlined proceedings and consistent treatment of all parties. *See, e.g.*, *In re Air Crash over the S. Indian Ocean on Mar. 8, 2014*, 352 F. Supp. 3d 19, 23–24 (D.D.C. 2018) (dismissing all cases on the grounds of *forum non conveniens* following the establishment of an MDL), *aff'd*, 946 F.3d 607 (D.C. Cir. 2020).

Like other aviation accident litigation, the lawsuits arising from the loss of Jeju Air Flight 7C2216 offer a "prime example" of cases that should be transferred under Section 1407. *Chicago Air Crash*, 476 F. Supp. at 447. There are already seven cases pending in three different federal districts.[3] The cases involve claims brought by dozens of distinct plaintiffs relating to the deaths of 23 distinct decedents. There is also a possibility that more plaintiffs will file similar claims in the near future.[4] All of the pending lawsuits seek to hold Boeing liable in tort for the deaths of the

---

[3] The Panel regularly centralizes the same or fewer numbers of cases. *See, e.g.*, *In re Auryxia (Ferric Citrate) Pat. Litig.*, 412 F. Supp. 3d 1347, 1350 (J.P.M.L. 2019) (four actions in two districts); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 326 F. Supp. 3d 1381, 1382 (J.P.M.L. 2018) (three actions in two districts) *In re: Simply Orange Orange Juice Mktg. & Sales Pracs. Litig.*, 867 F. Supp. 2d 1344, 1346 (J.P.M.L. 2012) (mem) (two actions in two districts); *In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (two actions in two districts); *see also* David F. Herr, *Multidistrict Litig. Manual* § 5.18 n.8 (2025) (collecting additional cases).

[4] That possibility has supported the creation of an MDL in the past. *See, e.g.*, *In re Indian Ocean Air Crash*, 190 F. Supp. 3d at 1360 n.2 ("Flight MH370 was carrying 239 passengers and crew when it disappeared. Thus, it is possible that more actions will be filed on behalf of other decedents . . . ."); *Clarence Center Air Crash*, 655 F. Supp. 2d at 1356 ("Flight 3407 was carrying many more passengers and, accordingly, additional lawsuits possibly may evolve . . . .").

passengers of Jeju Air Flight 7C2216. All will require a determination of whether South Korea would be a more convenient forum for litigation. Here, as in other air crash cases, centralization will prevent inconsistent pretrial rulings, eliminate duplicative discovery, allow for the creation of a uniform discovery plan, and conserve the resources of the parties, their counsel, and the judiciary.

**B. Centralization would promote the efficient resolution of common factual and legal issues and would avoid inconsistent pretrial rulings.**

Where actions involve common questions of fact, transfer to one district court best promotes the just and efficient conduct of the litigation and the convenience of the parties. *See, e.g.*, *Indian Ocean Air Crash*, 190 F. Supp. 3d at 1359; *San Francisco Air Crash*, 987 F. Supp. 2d at 1379; *Georgetown Air Crash*, 895 F. Supp. 2d at 1356; *Rio Grande Air Crash*, 787 F. Supp. 2d at 1361. The seven federal lawsuits at issue here raise significant common questions of fact that make centralization the most efficient approach to managing these cases. For example, all of these Jeju Air accident actions present common threshold questions related to whether the United States or South Korea is the appropriate forum for this litigation.[5] Boeing has already moved to dismiss

---

[5] In foreign air crash litigation, *forum non conveniens* is often a threshold issue common to all the subject actions. *See, e.g.*, *Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1071 (C.D. Cal. 2012); *In re Air Crash Over the Mid-Atl. on June 1, 2009*, 792 F. Supp. 2d 1090, 1093–94 (N.D. Cal. 2011); *In re Air Crash Over the Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832 (N.D. Cal. 2010); *Tazoe v. Aereas*, No. 07-21941, 2009 WL 3232908, at *8 (S.D. Fla. Aug. 24, 2009), *aff'd in part, rev'd in part on other grounds*, 631 F.3d 1321 (11th Cir. 2011); *Vorbiev v. McDonnell Douglas Helicopters, Inc.*, No. 08-05539, 2009 WL 1765675, at *1 (N.D. Cal. June 18, 2009); *In re Air Crash Near Peixoto de Azeveda, Brazil, on Sept. 29, 2006*, 574 F. Supp. 2d 272, 275 (E.D.N.Y. 2008), *aff'd sub nom. Lleras v. Excelaire Servs. Inc.*, No. 08-3823, 2009 WL 4282112 (2d Cir. Dec. 2, 2009) (unpublished); *Clerides v. Boeing Co.*, 534 F.3d 623, 626 (7th Cir. 2008); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 768–69 (C.D. Cal. 2006), *aff'd*, 263 F. App'x 555 (9th Cir. 2008); *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 495–96 (S.D.N.Y. 2007); *In re Air Crash Near Athens, Greece on Aug. 14, 2007*, 479 F. Supp. 2d 792, 804–05 (N.D. Ill. 2007). The actions at issue here are brought by South Korean citizens. They raise claims on behalf of themselves and the Korean passengers of Jeju Air Flight 7C2216, which was a flight operated by a Korean airline that crashed in South Korea. Federal courts frequently find that the United States is an inconvenient forum for cases that present facts such as these and that they should be

the complaints in Illinois for *forum non conveniens* on the grounds that the cases will be more conveniently litigated in South Korea. *See, e.g.*, *In re Air Crash over the S. Indian Ocean on Mar. 8, 2014*, 946 at 615 (affirming dismissal of claims arising from disappearance of Malaysia Airlines flight MH370 over Southern Indian Ocean in favor of litigation in Malaysia). Boeing expects to bring similar motions in the other cases. Boeing also expects to move to limit the initial phase of discovery to issues related to *forum non conveniens*, rather than proceeding on merits discovery. *Forum non conveniens* discovery will raise similar factual issues in all pending federal cases. Centralized proceedings would allow the parties and the judiciary to efficiently resolve these initial common questions as to all cases.

In the unlikely event that the cases remain in the United States, there can be no doubt that all the actions share factual questions regarding the cause or causes of the crash of Jeju Air flight 7C2216 and centralization will "eliminate duplicative discovery, particularly with respect to potential international discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *Indian Ocean Air Crash*, 190 F. Supp. 3d at 1359. For example, Plaintiffs have all alleged that (1) the accident aircraft was defectively and negligently designed, (2) the accident aircraft was defectively and negligently manufactured, and (3) Boeing failed to provide adequate warnings. And, as stated above, Plaintiffs' allegations in these actions focus on the same aircraft systems. Common questions regarding the design and manufacture of those systems and the adequacy of related warnings will have to be answered. Given the similarity between Plaintiffs' allegations, most of the discovery in these actions will be duplicative.

---

dismissed. So, if the cases were consolidated in an MDL, the MDL court would have discretion to resolve the *forum non conveniens* motion at the outset. *See, e.g.*, *In re Air Crash over the S. Indian Ocean on Mar. 8, 2014*, 946 F.3d at 614–15.

But those are not the only common factual questions raised by this case. In particular, there will be common questions about the possibility that other factors contributed to the accident or plaintiffs' injuries. These include factual questions regarding the construction of the concrete berm that the accident aircraft struck at Muan International Airport; the Muan International Airport's bird strike prevention policies and procedures; the functioning, maintenance, and operation of the accident aircraft; and the qualifications and training of the crew on board. This will require extensive liability discovery, including documentary evidence and witness testimony, from foreign entities in South Korea, which will be difficult, if not impossible to get.[6] Similarly, since all plaintiffs and decedents are South Korean citizens and residents, extensive damages discovery from South Korea will be needed. The ability to coordinate and streamline these complex international aspects of discovery make centralization particularly appropriate. *See, e.g.*, *Indian Ocean Air Crash*, 190 F. Supp. 3d at 1359; *see also, e.g.*, *San Francisco Air Crash*, 987 F. Supp. 2d at 1379; *Georgetown Air Crash*, 895 F. Supp. 2d at 1356; *Tegucigalpa Air Crash*, 598 F. Supp. 2d at 1369. Transfer for coordinated or consolidated proceedings would allow this discovery to proceed efficiently and without duplication for all of the pending lawsuits.

Failure to centralize these actions would also invite duplication of efforts and inconsistent rulings on other common issues. For example, regardless of where these cases are ultimately tried, determinations will need to be made in all of the actions about which forum's law should apply to the plaintiffs' claims. Further, these actions may be subject to dismissal for failure to join necessary parties, such as entities related to the Muan International Airport or the airline that operated and

---

[6] Boeing will be forced to rely on the Hague Convention to seek discovery of documents and witnesses in South Korea. But the evidence that can be obtained from South Korea using the Hague Convention is limited, as South Korea will not honor a request seeking pre-trial discovery, including requests for pretrial depositions. *See* Decl. of J. Park ¶¶ 130–35, *Ja v. The Boeing Co.*, No. 1:25-cv-10509 (N.D. Ill. Oct. 14, 2025), Dkt. No. 19.

maintained the accident aircraft and that employed and trained the flight crew. These actions also may be preempted by federal law. Given that these actions raise similar tort claims, all associated with the deaths of passengers on Jeju Air Flight 7C2216, additional common questions of fact and law are likely to arise during the litigation. Avoiding inconsistent rulings on each of these common issues overwhelmingly favors centralization. *See, e.g.*, *Indian Ocean Air Crash*, 190 F. Supp. 3d at 1359; *San Francisco Air Crash*, 987 F. Supp. 2d at 1379; *see also, e.g.*, *Georgetown Air Crash*, 895 F. Supp. 2d at 1356–57; *Rio Grande Air Crash*, 787 F. Supp. 2d at 1361; *Madrid Air Crash*, 672 F. Supp. 2d at 1379.

## II. These actions should be transferred to the Northern District of Illinois.

Although Boeing ultimately maintains that no court in the United States is an appropriate or convenient forum in which to resolve these actions, the Northern District of Illinois is, based on the relevant factors, the most appropriate transferee court.

When selecting a transferee court, the Panel may consider a number of factors, including:

- **Which of the actions were filed first or are most advanced.** *See, e.g.*, *Peixoto de Azeveda Air Crash*, 493 F. Supp. 2d at 1376 (transfer to district with earliest filed and most procedurally advanced actions); *In re JP Morgan Chase & Co.*, 452 F. Supp. 2d 1350, 1351 (J.P.M.L. 2006) (transfer to district with earliest filed and most procedurally advanced action); *In re Air Crash Disaster in Ionian Sea on Sept. 8, 1974*, 407 F. Supp. 238, 240 (J.P.M.L. 1974) (transfer to district containing actions in which discovery was underway).

- **Availability of an able jurist who has not yet handled an MDL in a district with significant expertise.** *See, e.g.*, *In re Dividend Solar Fin., LLC, & Fifth Third Bank Sales & Lending Pracs. Litig.*, 753 F. Supp. 3d 1365, 1367 (J.P.M.L. 2024) (transferring to "a skilled jurist who has not yet had the opportunity to preside over an MDL"); *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, 717 F. Supp. 3d 1357, 1360 (J.P.M.L. 2024) (same).

- **The accessibility or central location of the transferee forum.** *See, e.g.*, *Georgetown Air Crash*, 895 F. Supp. 2d at 1357 (choosing a transferee district that

was "centrally located for the geographically dispersed passengers"); *Medan Air Crash*, 544 F. Supp. 2d at 1380–81 ("[T]he Northern District of Illinois is a geographically central forum . . . .").

- **Where the parties and counsel are located.** *See, e.g.*, *San Francisco Air Crash*, 987 F. Supp. 2d at 1379; *Georgetown Air Crash*, 895 F. Supp. 2d at 1357; *Rio Grande Air Crash*, 787 F. Supp. 2d at 1362.

- **Where the majority of cases are currently pending.** *See, e.g.*, *Rio Grande Air Crash*, 787 F. Supp. 2d at 1362 (four of five actions pending in the transferee district); *Athens Air Crash*, 435 F. Supp. 2d at 1342 (majority of actions in transferee district); *Kirksville Air Crash*, 383 F. Supp. 2d at 1383 (same).

Based on these factors, the actions arising out of the loss of Jeju Air Flight 7C2216 should be transferred to the Northern District of Illinois for coordinated or consolidated pretrial proceedings. Alternatively, the Western District of Washington would be an appropriate transferee district.

### A.     The Northern District of Illinois is the proper transferee district.

The first three factors favor the Northern District of Illinois as the proper transferee district. First, although these actions are all still in their early stages, the actions in the Northern District of Illinois were filed first and are also the most advanced. *See In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1376 (J.P.M.L. 2023) (transferring to judge "who presides over the three most advanced actions"). Boeing has answered plaintiffs' complaints in the Northern District of Illinois actions and moved to dismiss on grounds of *forum non conveniens*.[7]

---

[7] While Boeing was preparing this motion, the *Ja*, *Hye*, and *Yang* plaintiffs moved to dismiss their complaints without prejudice. Boeing has opposed that motion, though plaintiffs' reasons for seeking dismissal only underscore the propriety of centralizing these cases. Plaintiffs wish to refile their cases to coordinate with the Washington and Virginia plaintiffs. But dismissal and refiling would allow only so much coordination; whether the plaintiffs refile in Washington or Virginia, litigation would remain in multiple venues. *Cf. In re AngioDynamics, Inc., & Navilyst Med., Inc., Port Catheter Prods. Liab. Litig.*, 753 F. Supp. 3d 1361, 1363 (J.P.M.L. 2024) (rejecting informal cooperation as a substitute for formal centralization). By centralizing all cases in the Northern District of Illinois, the Panel can achieve greater coordination, ensure the efficient resolution of the farthest-along cases where potentially dispositive motions have already been filed, and route future cases to the same court for consistent resolution.

Second, centralization in the Northern District of Illinois will also allow an able judge in a district that has significant MDL expertise the opportunity to preside over his first MDL. Judge Seeger, who presides over the three cases in the Northern District of Illinois, is "a skilled jurist who has not yet had the opportunity to preside over an MDL." *See In re: Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016). If Judge Seeger consents, transfer of the remaining cases to the Northern District of Illinois would allow the panel to provide Judge Seeger with that opportunity. *See id.* Alternatively, the Northern District of Illinois has a deep bench of judges with significant experience handling complex multidistrict litigation, including multidistrict aviation litigation.[8]

---

[8] In the past 10 years, at least 17 sets of actions have been transferred for coordinated or consolidated proceedings before judges in the Northern District of Illinois, including 6 sets of actions involving product liability claims like the ones asserted in these cases. *See In re Constr. Equip. Rental Antitrust Litig.*, No. MDL 3152, 2025 WL 2326845 (J.P.M.L. Aug. 13, 2025); *In re MultiPlan Health Ins. Provider Litig.*, 743 F. Supp. 3d 1376, 1377 (J.P.M.L. 2024) (mem) (products liability actions); *In re Tepezza Mktg., Sales Pracs., & Prods. Liab. Litig.*, 677 F. Supp. 3d 1368, 1369 (J.P.M.L. 2023) (products liability actions); *In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*, 655 F. Supp. 3d 1374, 1377 (J.P.M.L. 2023) (products liability actions); *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 655 F. Supp. 3d 1370, 1371 (J.P.M.L. 2023); *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 621 F. Supp. 3d 1349, 1350 (J.P.M.L. 2022) (mem) (products liability action); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022); *In re Abbott Lab'ys, Preterm Infant Nutrition Prods. Liab. Litig.*, 600 F. Supp. 3d 1345, 1346 (J.P.M.L. 2022) (mem) (products liability action); *In re Seresto Flea & Tick Collar Mktg., Sales Pracs. & Prods. Liab. Litig.*, 556 F. Supp. 3d 1380, 1381 (J.P.M.L. 2021) (mem) (products liability action); *In re Clearview AI, Inc., Consumer Priv. Litig.*, 509 F. Supp. 3d 1368, 1370 (J.P.M.L. 2020); *In re TikTok, Inc., Consumer Priv. Litig.*, 481 F. Supp. 3d 1331, 1332 (J.P.M.L. 2020); *In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358, 1360 (J.P.M.L. 2020*); In re Fairlife Milk Prods. Mktg. & Sales Pracs. Litig.*, 396 F. Supp. 3d 1370, 1371 (J.P.M.L. 2019*); In re Loc. TV Advert. Antitrust Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018); *In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1377 (J.P.M.L. 2018); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 291 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018); *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016). The Northern District of Illinois also has extensive experience handling complex air crash cases generally and multidistrict air crash cases specifically. *See, e.g., In re: Lion Air Flight JT 610 Crash*, No. 18-7686 (N.D. Ill. Nov. 19, 2018); *In re: Ethiopian Airlines Flight ET 302 Crash*, No. 19-2170 (N.D. Ill. Mar. 28, 2019); *Sulawesi Air Crash*, 626 F. Supp. 2d at 1355 (multidistrict litigation); *Medan Air Crash*, 544 F. Supp. 2d at

Third, although no U.S. forum is central to the many South Korean parties and witnesses involved in this litigation, the Northern District of Illinois is the most geographically central forum for the U.S. litigation. All plaintiffs are South Korean residents and citizens. South Korea is also where a majority of liability witnesses and most, if not all damages witnesses are located. No district in the United States is easily accessible for those South Korean parties or witnesses. The Northern District of Illinois is, however, the most geographically central U.S. forum. With litigation pending in districts on both the east and west coast, the Northern District of Illinois is a geographically central venue. *See Medan Air Crash*, 544 F. Supp. 2d at 1380–81 ("[T]he Northern District of Illinois is a geographically central forum . . . .").

The remaining factors do not strongly favor any district. The parties and their counsel are not concentrated in any district. All plaintiffs are citizens and residents of South Korea, and all decedents were citizens and residents of South Korea at the time of their deaths. No United States forum is convenient for them. Boeing is a citizen of Virginia and Delaware, but its Commercial Airplanes division that designed and manufactured the subject aircraft is headquartered in Washington. Counsel for the parties are similarly dispersed. The plaintiffs in Illinois, Washington, and Virginia courts are all represented by counsel located in the state where their lawsuits were filed. Boeing is represented by counsel in all three jurisdictions.

There is also no district with a majority of cases. The Northern District of Illinois and Eastern District of Virginia both have three cases pending. And while there is only one case

---

1381 (multidistrict litigation); *Athens Air Crash*, 435 F. Supp. 2d at 1342 (multidistrict litigation); *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 909 F. Supp. 1083, 1086 n.1 (N.D. Ill. 1995) (multidistrict litigation), *aff'd and remanded sub nom. In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932 (7th Cir. 1996); *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 128 F.R.D. 131, 133 (J.P.M.L. 1989) (multidistrict litigation); *Chicago Air Crash*, 476 F. Supp. at 452 (multidistrict litigation).

pending in the Western District of Washington, that case includes claims on behalf of 26 plaintiffs and 14 decedents—more than all of the other cases combined. As discussed below, if this factor favors any forum, it is the Western District of Washington.

      **B.    Alternatively, the Panel should select the Western District of Washington as the transferee court.**

While most of the relevant factors point to the Northern District of Illinois as the appropriate transferee court, the Western District of Washington would also be an appropriate transferee court under the relevant factors. First, the relevant Boeing witnesses are in the Western District of Washington because that is where the subject aircraft was designed and assembled. Further, although no U.S. forum is accessible or convenient for the numerous South Korean parties and witnesses, travel to the Western District of Washington would be less burdensome for them than to other districts, especially a jurisdiction on the East Coast which is the farthest away from South Korea. *See San Francisco Air Crash*, 987 F. Supp. 2d at 1379 ("[A] West Coast transferee forum will be a more convenient forum for any parties that may be traveling from Asia."). Second, although only one case has been filed in the Western District of Washington, that case was brought by a majority of the plaintiffs that have filed claims related to this accident to date and involves the majority of decedents. *See In re Air Crash Disaster Near Saigon, S. Vietnam, on Apr. 4, 1975*, 404 F. Supp. 478, 480 (J.P.M.L. 1975) (selecting as the transferee court the district where "the claims of the most significant number of plaintiffs" were pending). Third, although the Northern District of Illinois has greater expertise handling MDLs, the Western District of Washington has judges with the "experience to steer these actions on a prudent course." *See In re: Park W.*

*Galleries, Inc., Mktg. & Sales Pracs. Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) ("*Park W. Galleries*").[9]

## CONCLUSION

These seven actions present a clear case for transfer under 28 U.S.C. § 1407(a). They arise from a single aviation accident, the crash of Jeju Air Flight 7C2216; they raise similar factual and legal issues; and they are pending in three different federal district courts. Additional actions may also be filed. The United States District Court for the Northern District of Illinois can best accommodate this litigation and is the court to which this Panel should transfer the actions in question. Accordingly, Boeing respectfully requests that the Panel centralize the litigation in the Northern District of Illinois, or alternatively, the Western District of Washington.

Dated: November 19, 2025

**PERKINS COIE LLP**

By: */s/ Mack H. Shultz, Jr.*
Mack H. Shultz, WSBA No. 27190
MShultz@perkinscoie.com
**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone +1.206.359.8000
Facsimile +1.206.359.9000

*Attorney for The Boeing Company*

---

[9] In the past 20 years, at least five sets of actions have been transferred for coordinated or consolidated proceedings before judges in the Western District of Washington. *See In re: New Cingular Wireless, PCS, LLC Data Servs. Sales Tax Refund Litig.*, 988 F. Supp. 2d 1375 (J.P.M.L. 2013); *Park W. Galleries*, 645 F. Supp. 2d at 1359; *In re U.S. Postal Serv. Priv. Act Litig.*, 545 F. Supp. 2d 1367 (J.P.M.L. 2008); *In re: Wash. Mut., Inc., Sec., Derivative & ERISA Litig.*, 536 F. Supp. 2d 1377 (J.P.M.L. 2008) (mem); *In re: Gen. Motors Corp. Speedometer Prods. Liab. Litig.*, 530 F. Supp. 2d 1354 (J.P.M.L. 2008).